## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

MICHAEL J. BAISDEN

           Plaintiff,

v.                                CIVIL ACTION NO. 2:08-cv-01375

CSC-PA, INC., et al.,

           Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are (1) the defendants' Motion for Partial Summary Judgment on Count I of the Amended Complaint Related to the Claim of Breach of Contract/Wrongful Discharge and/or Retaliatory Discharge [Docket 121]; (2) the defendants' Motion for Partial Summary Judgment on Count II of the Amended Complaint [Docket 119]; (3) the defendants' Motion for Partial Summary Judgment on Count III of the Amended Complaint Related to the Claim of Damages Under the Wage Payment and Collection Act [Docket 116]; and (4) the plaintiff's Motion for Partial Summary Judgement [Docket 117].[1]

For the reasons provided below, the court **GRANTS in part and DENIES in part** the defendants' Motion for Partial Summary Judgment on Count I of the Amended Complaint Related to the Claim of Breach of Contract/Wrongful Discharge and/or Retaliatory Discharge [Docket 121].

---

[1] The defendants initially filed three separate motions for partial summary judgment, each with an accompanying memorandum of law. In an order dated August 31, 2010, this court ordered the defendants to file a consolidated memorandum of law in compliance with the local rules. [Docket 155]. Accordingly, the court considered arguments in the consolidated memorandum [Docket 158] in support of the defendants' three motions for partial summary judgment.

The court **GRANTS in part and DENIES in part** the defendants' Motion for Partial Summary Judgment on Count II of the Amended Complaint [Docket 119]. The court **DENIES** the defendants' Motion for Partial Summary Judgment on Count III of the Amended Complaint Related to the Claim of Damages Under the Wage Payment and Collection Act [Docket 116]. Finally, the court **DENIES** the plaintiff's Motion for Partial Summary Judgement [Docket 117].

I.    **Background**

The dispute in this case arises out of the employment relationship between the plaintiff, Michael Baisden, and the three defendants: his employer, CSC-PA, Inc.[2] ("the corporation"), and two of the corporation's officers, Troy and Patrick Dolan, who supervised the plaintiff. The plaintiff was employed by the corporation from April 1, 1997 to January 4, 2008. On March 20, 1997, Troy Dolan, then president of the corporation, sent the plaintiff a written employment offer which included salary and benefits information as well as a rate of 7% commission on gross sales of Classic Systems and Parts. The plaintiff accepted this offer in writing on March 21, 1997, and on April 1, 1997, the plaintiff began his employment as a sales representative with the corporation. On May 1, 1998, Troy Dolan sent the plaintiff a letter increasing his base salary and adding commission at a rate of 5% for V Plows, Angle Plows, and Impact Beds. On April 15, 1999, Troy Dolan again increased the plaintiff's salary and noted that his commissions remained at 7% for scrapers and 5% for "the balance of the Classic Products." The plaintiff was employed by the corporation until early 2008. During this time, the plaintiff received a base salary, paid on a bi-weekly basis, and commission checks depending on his sales. The proper payment of these commissions is the central

---

[2] During the course of the plaintiff's employment, the corporate defendant in this action changed its name twice. As these name changes are not significant to the present litigation, reference to "the corporation" incorporates CSC-PA, Inc. and its successors.

issue in this case. The plaintiff received a Commission Statement each pay period which listed the account name, the invoice number, and the commission on the account as well as the plaintiff's total commissions for that pay period, but the Commission Statements did not include any detailed information about the sale such as the products sold or the sale total. All of the information about a particular sale could be found on the sales invoice, but the plaintiff was not provided copies of these invoices. The present case focuses on discrepancies between the invoices and the resulting commissions.

The dispute between the parties arose early January 2008. On January 2, 2008, Patrick Dolan, Jr., then a vice president with the corporation, phoned the plaintiff and they discussed sales and marketing plans for the upcoming year, which was not unusual, "especially for this time of year." During this conversation, Patrick Dolan praised the plaintiff's strong sales record and the plaintiff grew suspicious that he was not properly being paid commissions for all of his sales.

After the phone call on January 2, 2008, the plaintiff compared one of his pay stubs to an invoice for which he happened to know the amount (the plaintiff did not regularly have access to invoices) and became concerned about his commission on the invoice and account. On January 4, 2008, the plaintiff phoned Patrick Dolan to discuss his concerns and, after the exchange grew heated, Patrick Dolan terminated the plaintiff's employment. Mr. Dolan also asked the plaintiff to return the corporation's truck and other property and sent an employee to retrieve these items from the plaintiff's home later that day. The plaintiff alleges that he was terminated because he asked to review past invoices to verify that he had been properly paid commissions. The defendants contend that the plaintiff was fired for insubordination for questioning Mr. Dolan's integrity and honesty.

The following week the parties had several additional conversations. First, Patrick Dolan called the plaintiff, apologized for firing him, and tried to discuss the possibility of the plaintiff returning to the corporation. The two men discussed the plaintiff's concerns and the plaintiff made several requests, including access to invoices for his prior sales, back payment for the allegedly improperly paid commissions at issue in this case, and a promotion with accompanying raise. The parties dispute the nature of the conversation, with the defendants claiming that they were unconditionally offering to reinstate the plaintiff to his former position and the plaintiff contending that the conversation was merely a negotiation about the possibility of returning to the corporation. Ultimately, Mr. Dolan denied all of the plaintiff's requests and the plaintiff declined to return to the corporation. Second, Troy Dolan called the plaintiff and had a similar conversation, first apologizing for his termination and then discussing the possibility of the plaintiff returning to work. The plaintiff reiterated his requests which Troy Dolan denied and the plaintiff again declined to return to the corporation. On January 9, 2008, the plaintiff received a letter, dated January 4, 2008, terminating his employment and citing the reason as "insubordination."

The parties did not have any further communication and the plaintiff filed the instant diversity action in this court on December 1, 2008. The plaintiff asserts claims for breach of contract, wrongful termination, fraud, conversion, and violation of the West Virginia Wage Payment and Collection Act, alleging $260,771.07 in unpaid commissions. The plaintiff bases these claims on invoices and commission records, as reviewed by the plaintiff's expert accountant. The defendants assert that the plaintiff was overpaid commissions during his employment and bases this argument on internal records and auditing. The defendants filed three motions for partial summary judgment on Counts I, II, and III of the Amended Complaint and the plaintiff filed a Motion for

Summary Judgment on Count III of the Amended Complaint. This Order addresses all four pending motions.

## II. Legal Standard for Summary Judgment Motions

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### III. Discussion

### A. Count I: Breach of Contract, Wrongful Discharge, and Retaliatory Discharge

At the outset, the court notes that this count asserts several causes of action and I will address each in turn. First, the plaintiff asserts a cause of action for wrongful termination in violation of his employment contract. Second, the plaintiff asserts a breach of contract claim for nonpayment of contractually owed commissions. Third, the plaintiff asserts a wrongful discharge claim under *Harless v. First Nat'l Bank*, 246 S.E.2d 270 (W. Va. 1978).

#### 1. *Wrongful Termination Claim*

The plaintiff asserts that he was wrongfully terminated by the defendants in violation of the Personnel Handbook which served as his employment contract. The plaintiff later retreated from this original theory and now asserts that "the Employee Handbook is not evidence of the contract; rather it is an admission by the Defendants that the plaintiff was not fired for insubordination." (Pl.'s Resp. to Defs.' Partial Summ. J. Mot. at 4.) In response the defendants argue that Personnel Handbook did not constitute an employment contract or otherwise change plaintiff's status as an at-will employee under West Virginia law because the Personnel Handbook contains a disclaimer clearly stating that the handbook is "not intended to create a contract of employment." The defendants further notes that they are not liable for wrongful termination because the handbook notes that the corporation "is an employer at will . . . and has the sole discretion to determine the duration of my employment without notice and without reasons."

The plaintiff asserts that he was terminated in violation of his employment contract in the Personnel Handbook. To succeed with this claim, however, the plaintiff must first establish the existence of an employment contract that altered his at-will employee status, and the facts do not

support any such contract. The existence of a contract is ordinarily an issue left to the jury, however, courts in West Virginia have found it appropriate to address the existence of an employment contract in summary judgment. *See Hatfield v. Health Mgmt Assoc. of the West*, 672 S.E.2d 395, 400-02 (W. Va. 2008). While an employee handbook may create a contract, this rule is limited and an employer may protect itself from liability by placing a clear and prominent disclaimer in the handbook. *Bine v. Owens*, 542 S.E.2d 842 (W. Va. 2000). The *Bine* Court determined that "nothing in the handbook was intended to alter Mr. Bine's at-will employment relationship," and granted summary judgment for the employer on a wrongful termination claim. The corporation's Personnel Handbook contains a similar acknowledgment and, while the plaintiff does not recall signing the acknowledgment specifically, he remembers receiving a copy of the Personnel Handbook. Taking the evidence in a light most favorable to the nonmoving party, a reasonable juror in this case could not find that an employment contract existed based solely on the Personnel Handbook. While the plaintiff, as an at-will employee, had a contractual relationship with his employer, the defendants did not breach this contract when they terminated the plaintiff because an at-will employment contract "is a contract of indefinite duration that can be terminated at the pleasure of either party at any time." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999) (quoting *Hrehorovich v. Harbor Hosp. Ctr. Inc.,* 614 A.2d 1021, 1030 (Md. 1992)).

Accordingly, to the extent that the plaintiff's wrongful termination claim rests on the existence of a contract altering his at-will employment status, the court **FINDS** that there is no genuine issue of material fact as to the existence of any such contract; the defendants' Motion for Partial Summary Judgment on Count I of the Complaint is **GRANTED in part.**

### *2.     Breach of Contract Claim*

The plaintiff also asserts that the defendants are in breach of contract for "failure to properly pay Mr. Baisden his commissions per their contractual agreement." (Am. Compl. at 4.) In support of this claim, the plaintiff looks to Mr. Dolan's original written employment offer and Mr. Baisden's subsequent written acceptance as evidence of a binding contract and the plaintiff "claims the right to receive the commissions due under his contract as evidenced by the signed writings." (Pl.'s Resp. to Defs.' Partial Summ. J. Mot. at 3.) In response, the defendants assert that there was no contract because the writings exchanged between the parties "included open terms and contemplated further agreements and negotiations" and there was no "meeting of the minds between the parties on the critical and material terms of what constitutes a commission: accounts and parts," pointing to the "Defendants' ability to unilaterally change the terms of the commissions." (Defs.' Amend. Memo. in Supp. of Motion for Partial Summ. J. at 8-9.)

The defendants assert that the plaintiff's contract claims are limited because of his status as an at-will employee. As discussed above, the plaintiff may not bring a wrongful termination claim, however, the plaintiff may still assert claims for the defendants' breach of his at-will employment contract. *See Spriggs*, 165 F.3d at 1017-18. The parties agree that the defendants' March 20,1997, letter was an employment offer containing salary and benefits information, as well as information about the calculation of commissions. The plaintiff accepted this offer in writing the following day. The fact that the defendants "unilaterally changed" the terms of the contract by giving the plaintiff a raise does not prove that there was no original contract between the parties. Taking all evidence in a light most favorable to the nonmoving party, I **FIND** that there is a genuine issue of material fact as to whether there was a binding contract between the parties.

Accordingly, to the extent that the plaintiff's breach of contract claim relies on the written offer and acceptance letters, the court **FINDS** that there are genuine issues of material fact as to the existence of a contract; the defendants' Motion for Partial Summary Judgment on Count I of the Complaint is **DENIED in part.**

### 3. Harless *Claim for a Violation of the West Virginia Wage Payment Act*

The plaintiff also asserts a claim for retaliatory discharge, arguing that he was wrongfully terminated for trying to enforce his rights under the West Virginia Wage Payment and Collections Act ("the Wage Act"). The plaintiff bases this claim on a *Harless v. First Nat'l Bank.,* 246 S.E.2d 270, 271 (W. Va. 1978), which held that "where employer's motivation for discharge is to contravene some substantial public policy principle, then employer may be liable to employee for damages occasioned by this discharge." The West Virginia Supreme Court of Appeals has not recognized *Harless* actions for violations of the Wage Act and has read *Harless* narrowly so as not to "unlock a Pandora's box of litigation in the wrongful discharge arena." *Roberts v. Adkins*, 444 S.E.2d 725, 729 (W. Va. 1994). This court declines to recognize a new type of *Harless* action in this case.

Accordingly, the court **FINDS** that the plaintiff has not established a wrongful termination claim; the defendants' Motion for Partial Summary Judgment on Count I of the Complaint is **GRANTED in part.**

### B. Count II: Fraud and Conversion

#### 1. *Fraud*

The plaintiff asserts that the defendants conspired and engaged in a premeditated plan to improperly deny his commissions, deliberately withhold invoices from the plaintiff, and present him

with false commission statements. In response, the defendants contend that the plaintiff did not "clearly and specifically" plead a claim for fraud and cannot establish the "critical element" of "intentional action by the Dolans." In addition, the defendants assert that any of the plaintiff's fraud claims are limited by West Virginia's two-year statute of limitations for fraud claims. According to the defendants, the plaintiff "should have been aware of any nonpayment of commissions," when he received his Commission Statements, and, accordingly, the statute of limitations bars all of the plaintiff's fraud claims that are based on Commission Statements dated more than two years before the filing of the complaint.

As discussed above, there are genuine issues of material fact as to whether the plaintiff's commissions were properly paid. The defendants assert that even if this is the case, the defendants are not liable for fraud because they had no knowledge of these improper payments and or any intent to deprive the plaintiff of his commissions. The West Virginia Supreme Court of Appeals, however, has held that "fraud does not require in all circumstances that its perpetrator have actual knowledge of the material falsity of the statement." *Polling v. Pre-Paid Legal Services, Inc.,* 575 S.E.2d 199, 208 (W. Va. 2002) (internal citations omitted). While the Dolans did not personally prepare commission statements or checks, they authorized "the paying of commissions on comissionable accounts and parts" and had great supervisory authority over the payment of commissions. Faced with this evidence, I **FIND** that if the plaintiff was improperly paid, then a reasonable juror could determine that Dolans knew or, by nature of their roles as officers, should have known, of the errors in the plaintiff's commissions.

Regardless of whether the two-year statute of limitations period is tolled, any such finding would merely limit, rather than prevent the defendants' liability for fraudulent acts and summary judgment on this issue is not appropriate at this point.

Accordingly, the court FINDS that there are genuine issues of material fact on the plaintiff's fraud claim; the defendants' Motion for Partial Summary Judgment on Count II of the Complaint is **DENIED in part.**

### *2. Conversion*

In Count II of the Amended Complaint, the plaintiff also asserts that the defendants converted his property. Specifically, the plaintiff alleges that Patrick Dolan "improperly placed his vendor code on invoices which should have been attributable to sales made by the Plaintiff, thereby converting for himself the commissions which were rightly due the plaintiff" and that "Troy Dolan took commissions owing to the plaintiff for his own account." (Amend. Compl. at 5.) The plaintiff's conversion claim alleges, first, that the Dolan brothers each credited themselves with commissions that the plaintiff had earned, and, second, that the Dolans, as corporate officers, are liable for the corporation's conversion of the plaintiff's unpaid commissions even if they did not personally convert the commissions or take possession of the unpaid money. In response, the defendants contend that the plaintiff has not established any property interest or shown that the defendants exerted dominion or control over the commissions.

West Virginia law recognizes conversion as "any distinct act of dominion wrongfully exerted over the property of another in denial of his rights or inconsistent therewith. . . ." *Pine & Cypress Mfg. Co. v. American Eng'g & Constr. Co.*, 125 S.E. 375, Syll. Pt. 3 (1924). "A plaintiff cannot bring a claim for conversion unless he has a property interest in and is entitled to immediate

possession of the converted item. Moreover, in order to recover on a tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of [a] contract." *Worldcom v. Byne*, 68 Fed App'x 447, 454 (4th Cir. 2003) (internal quotations omitted). In the present case, the plaintiff's conversion claim arises wholly from the defendants' duty to pay the plaintiff commissions according to their contract. Because this duty exists solely by nature of contract, the plaintiff cannot establish a property interest to support a claim for conversion.

Accordingly, the court **FINDS** that there are genuine issues of material fact as to whether the defendants converted the plaintiff's property; the defendants' Motion for Partial Summary Judgment on Count II of the Complaint is **GRANTED in part.**

### C. Count III: Violation of the West Virginia Wage Payment and Collection Act

The plaintiff asserts that the defendants' failure to properly pay his commissions violated the Wage Act and demands unpaid commissions as well as liquidated damages and costs under the Wage Act. The parties have cross-moved for summary judgment on this count. The plaintiff moves for summary judgment on the issues of liability and damages. The defendants, while contesting liability under the Wage Act, assert that the Dolans cannot be held personally liable under the Wage Act and any Wage Act claims are limited by a five-year statute of limitations.

The Wage Act places certain requirements on employers to pay wages to employees, both during and immediately after employment, in a timely manner. *See* W. Va. Code. § 21-5-4. The Wage Act broadly defines firms to include any "division of a corporation, . . . or officer thereof, employing any person," W. Va. Code. § 21-5-1(a), and defines wages to include all "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task,

piece, commission, or other basis of calculation," W. Va. Code. § 21-5-1(c). Given these definitions, the Wage Act applies to the defendant CSC-PA, Inc., and any unpaid commissions that the plaintiff earned while employed by the defendant.

### *1. The plaintiff's Motion for Summary Judgment on Count III*

The plaintiff asserts that there are no genuine issues of material fact on the issues of liability or damages under the Wage Act. As to liability, a violation of the Wage Act requires nonpayment of wages by an employer and, as discussed above, there are genuine issues of material fact on whether the plaintiff's commissions were properly paid.

Accordingly, the court **FINDS** that there are genuine issues of material fact as to whether the defendants violated the Wage Act; the plaintiff's Motion for Partial Summary Judgment is **DENIED.**

### *2. The defendant's Motion for Summary Judgment on Count III*

The defendants argue that they are not liable under the Wage Act, but, if they are liable under the Wage Act, neither Patrick nor Troy Dolan can be held personally liable. The plaintiff asserts that the Dolan brothers are liable under the Wage Act as corporate officers. The defendants contend that the Dolan brothers cannot be held liable under the Wage Act because they did not "knowingly permit" the Wage Act violations. In addition, the defendants assert that a ten-year statute of limitations applies while the plaintiffs claim that a five-year statute of limitations is appropriate.

The Wage Act provides that "officers" may be held liable under the wage act when they "knowingly permit the corporation of firm to violate provisions" of the Wage Act, W. Va. Code. § 21-5-1(h). This provision serves to "to impose personal liability on officers in the management of a corporation who knowingly permit their corporation to act in violation of the provisions of the Act." *Mullins v. Venable*, 297 S.E.2d 866, 869 (W. Va. 1982). In *Mullins*, the Court created "in

-13-

corporate officers the persona of *quasi-* public officials who owe a duty to the public, as well as to the corporation's employees, to take care that the Wage Payment and Collection Act is enforced." *Id.* at 871. Subsequent interpretations of *Mullins* "construed the phrase 'knowingly permits' as meaning 'to allow with personal information or allow by virtue of a position in which the person should have known.'" *McDaniel v. W. Va. Div. of Labor*, 591 S.E.2d 277, 283 (W. Va. 2003). In the present case, both Dolan brothers were actively involved in the day-to-day management of the corporation and regularly made determinations regarding the payment of wages and commissions. Therefore, a reasonable juror, taking all evidence in a light most favorable to the plaintiff, could find that Patrick and Troy Dolan were in positions such that they should have known of violations of the Wage Act.

Regardless of whether the plaintiff's Wage Act claims are subject to a five or to a ten-year statute of limitations, a five-year limitation period would merely limit the plaintiff's ultimate recovery, rather than bar his entire Wage Act claim. Accordingly, summary judgment on this issue is not appropriate as the issue of the defendants' liability under the Wage Act remains open.

Accordingly, the court **FINDS** that there are genuine issues of material fact as to whether the defendants violated the Wage Act; the defendant's Motion for Partial Summary Judgment on Count III of the Amended Complaint Related to the Claim of Damages Under the Wage Payment and Collection Act is **DENIED.**

**IV. Conclusion**

For the foregoing reasons, the court **GRANTS in part and DENIES in part** the defendants' Motion for Partial Summary Judgment on Count I of the Amended Complaint Related to the Claim of Breach of Contract/Wrongful Discharge and/or Retaliatory Discharge [Docket 121]. The court

**GRANTS in part and DENIES in part** the defendants' Motion for Partial Summary Judgment on Count II of the Amended Complaint [Docket 119].  The court **DENIES** the defendants' Motion for Partial Summary Judgment on Count III of the Amended Complaint Related to the Claim of Damages Under the Wage Payment and Collection Act [Docket 116].  Finally, the court **DENIES** the plaintiff's Motion for Partial Summary Judgement [Docket 117].  Left remaining are the plaintiff's breach of contract claim based on the written offer and acceptance, the plaintiff's fraud claim, and the plaintiff's Wage Act claims.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                                         ENTER:        October 1, 2010

                                         Joseph R. Goodwin, Chief Judge